**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **JONATHAN WONG** | **CASE NO.  6:25-CV-00562** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **FEDERAL TRADE COMMISSION** | **MAGISTRATE JUDGE DAVID J. AYO** |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment [Doc. No. 29] filed by Plaintiff, Jonathan Wong ("Wong" or "Plaintiff"), and a Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment [Doc. No. 33] filed by Defendant, the Federal Trade Commission ("FTC" or "Defendant"). Wong then filed a reply [Doc. No. 36] and response to Defendant's Cross Motion for Summary Judgment [Doc. No. 37]. The FTC filed a reply [Doc. No. 40].

For the reasons set forth, Wong's Motion [Doc. No. 29] is **DENIED** and the FTC's Motion [Doc. No. 33] is **GRANTED**.

## I.    BACKGROUND

This case challenges a final decision of the FTC against Wong, upholding his suspension and monetary fines for violating Horseracing Integrity and Safety Act ("HISA") Rule 3212.[1] Wong is a successful thoroughbred horse trainer, manager, and racer.[2] One of Wong's horses, named Heaven and Earth, tested positive for a banned

---

[1] [Doc. No. 1, p. 20 at ¶ 126; p. 21 at ¶ 129; p. 24 at ¶ 154].
[2] [Id. at p. 14 at ¶¶ 67–70; p. 28 at ¶ 169].

substance following its first-place finish at a race in Indiana.[3] As Wong was the "Responsible Person" for Heaven and Earth, it was Wong's "duty . . . to ensure that no Banned Substance is present in the body of his … Covered Horse."[4] Regardless of the circumstance, a "Banned Substance" is "prohibited at all times."[5] Therefore, Wong was not just "[r]esponsible" for Heaven and Earth's sobriety, but "strictly liable for any Banned Substance … found to be present in a Sample collected from his … Covered Horse(s)."[6] It follows, then, that when Heaven and Earth tested positive for Metformin—a diabetes drug prohibited by the Horseracing Integrity and Safety Authority ("the Authority")— Wong suffered penalties.[7] The Authority suspended Wong from thoroughbred horseracing for two years, made him forfeit $21,600 of Heaven and Earth's winnings, fined him $25,000, and took another $8,000 for "adjudication costs."[8] Newly suspended, Wong had to transfer 150 horses to other trainers, including a horse that went on to compete at the Kentucky Derby.[9]

### A.    FTC Appeal Process

Wong fought the suspension by requesting a second laboratory test of Heaven and Earth's urine and blood samples.[10] His suspension was temporarily lifted while the samples were retested in a second lab in Chicago.[11]  However, the second lab confirmed the presence of Metformin in the samples and his suspension was

---

[3] [Id. at pp. 14–15].
[4] [Id. at p. 5 at ¶ 18 (quoting HISA Rule 3212)].
[5] [Id. at p. 6 at ¶ 21 (quoting HISA Rule 3111(a)(1))].
[6] [Id. at ¶ 19 (citing HISA Rule 3212(a))].
[7] [Id. at p. 21 at ¶ 129 (*see* HISA Rule 3223)].
[8] [Id.].
[9] [Id. at p. 16 at ¶¶ 86–87].
[10] [Id. at ¶ 89].
[11] [Id. at pp. 16–17 at ¶¶ 90, 96].

reinstated.[12] Wong disputed the rule violation at a hearing before an arbitrator selected by the Horseracing Integrity and Welfare Unit ("HIWU"), the private enforcement arm of HISA rule violations under the Anti-Doping and Medication Control ("ADMC") Program.[13] During the discovery period prior to the ruling, Wong identified numerous errors in the sample testing from both laboratories.[14] Despite protests from Wong, HIWU requested and was granted a third sample test by the laboratory at the University of California, Davis, which found Metformin in the sample of urine.[15]

The arbitrator found HIWU had successfully carried the burden of proving Wong violated HISA Rule 3212 due to the presence of Metformin in his horse's samples, Wong failed to provide any mitigating evidence, and Wong was strictly liable for the HISA Rule 3212 violation.[16] Upon issuing the final decision, the arbitrator imposed civil sanctions of "a two-year suspension, disgorgement of the Horse's $21,600 purse winnings, and a $25,000 fine, plus $8,000 of HIWU's share of the "adjudication costs."[17] Wong appealed the arbitrator's final decision to the Administrative Law Judge ("ALJ"), arguing the arbitrator erred in applying various HISA rules.[18] When the ALJ affirmed the arbitrator's final decision and imposition of civil sanctions, Wong timely filed a petition for review before the FTC.[19]  In his

---

[12] [Id. at p. 17 at ¶¶ 98–99].
[13] [Id. at pp. 7–8 at ¶¶ 30–31].
[14] [Id. at p. 18 at ¶ 107].
[15] [Id. at pp. 18–19 at ¶¶ 108, 110, 114].
[16] [Id. at pp. 20–21 at ¶¶ 126–28].
[17] [Id. at p. 21 at ¶ 129 (internal citation omitted)].
[18] [Id. at pp. 22–23 at ¶¶ 131–35].
[19] [Id. at p. 22 at ¶ 139].

petition, Wong sought a reversal of the affirmance of the arbitrator's decision for three reasons: (1) the ALJ failed to apply the HISA Rules' evidentiary requirements, (2) the ALJ incorrectly excused the violations of HISA Rules 5510(b), 6305(b)(1), and 6315(b) through their application of HISA Rule 3122(d)'s burden-shifting framework, and (3) the ALJ failed to address the merits of Wong's argument when they rejected his petition for incorrect procedural reasons.[20] Following the FTC's refusal to review the petition and its subsequent issuance of a Final Decision upholding the ALJ's decision, the Petitioner appealed to this Court for judicial review.[21]

### B.    Western District of Louisiana Procedural History

Wong first filed a case before the Court challenging the constitutionality of the statute creating the Authority, the HISA, and appealing the administrative adjudication and civil penalties levied against him by the Authority.[22] The Court previously dismissed Wong's case without prejudice, finding the Authority to be a necessary party, joinder of the Authority impossible for lack of personal jurisdiction, and the action could not proceed among the existing parties if the Authority was not joined as a party.[23]

Applying the Court's previous dismissal instructions, Wong's new Complaint before the Court omits claims impugning the Authority's distinct interest and sues only the FTC "to vacate the FTC's final decision against him."[24] In Wong's pending

---

[20] [Id. at pp. 22–24 at ¶¶ 140–52].
[21] [Id. at pp. 24–25 at ¶¶ 154, 157].
[22] [24-cv-1410, Doc. No. 1 at p. 2].
[23] [24-cv-1410, Doc. No. 45].
[24] [Doc. No. 1, p. 3].

Motion for Summary Judgment [Doc. No. 29], Wong asserts that he is entitled to judgment as a matter of law due to the FTC's failure to "abide by its own regulations" in their application of the HISA rules under the *Accardi* doctrine.[25] In contrast, the FTC argues in its Motion for Summary Judgment [Doc. No. 33] that the HISA evidentiary rules were applied by the ALJ "to the letter."[26] The FTC reasons that because "Wong [] failed to establish that the FTC's decision was arbitrary or capricious, or that the FTC committed a clear error of judgment[,]" the Court should affirm the FTC's Final Decision.[27]

The issues have been fully briefed, and the Court is prepared to rule.

## II.   LAW AND ANALYSIS

### A.   Standard of Review

#### 1.   Motion for Summary Judgment Standard

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in

---

[25] [Doc. No. 29-1, pp. 19–20] (quoting *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979).
[26] [Doc. No. 33-1, p. 19].
[27] [Id. at pp. 20–21].

the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249 (1986) (citation modified).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation modified). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). Additionally, there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

"When parties file cross-motions for summary judgment," the court must "review 'each party's motion independently, viewing the evidence and inferences in

the light most favorable to the nonmoving party.'" *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 297–98 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)). "This is because each party, as a movant for summary judgment, bears the burden of establishing that no genuine dispute of material fact exists and that the movant is entitled to a judgment as a matter of law." *Gruver v. La. ex rel. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 654 F. Supp. 3d 539, 545 (M.D. La. 2023) (internal quotations and citations omitted).

### 2.   Judicial Review Under the Administrative Procedure Act

The Administrative Procedure Act ("APA") governs judicial review of administrative adjudications. Under the APA, any "person adversely affected or aggrieved by agency action" is entitled to judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy." 5 U.S.C. §§ 702, 704. "Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." *Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C. 2010). However, where the Court is reviewing the decision of an administrative agency, "the motion for summary judgment stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the Court's review." *Holy Cross Sch. v. Fed. Emergency Mgmt. Agency*, 648 F. Supp. 3d 747, 752 (E.D. La. 2023).

In Wong's Motion for Summary Judgment, he asserts that pursuant to the APA, a district court must hold unlawful and set aside any agency action found to be

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."[28] Defendant agrees with Plaintiff in their Cross Motion for Summary Judgment, pulling the arbitrary-and-capricious test from the Fifth Circuit's holding in *Fath v. Texas Department of Transportation*.[29] Wong asserts in his reply that his *Accardi* challenge is a question of regulation interpretation and should be reviewed *de novo* as he is challenging whether the FTC complied with its own regulations.[30] FTC's reply clarifies that the standard of review in APA cases adheres to the arbitrary-and-capricious test, but "questions of law are reviewed *de novo*."[31]

While the parties' briefings before the Court attempt to muddle the standard of review to be applied in the adjudication of the Motions, the Court takes this time to clear the waters. "The APA prescribes a narrow and highly deferential standard." *Boquet Oyster House, Inc. v. U.S.*, No. 09-CV-3537, 2011 WL 5187292, at *4 (E.D. La. Oct. 31, 2011) (citation omitted). The APA authorizes the reviewing court to hold unlawful and set aside agency action, findings, and conclusions found to be—

> (A) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to section 556 and 557 of this title or otherwise reviewed on the record of any agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."

---

[28] [Doc. No. 29-1 at p. 19]; 5 U.S.C. § 706(2)(A).
[29] [Doc. No. 33-1 at p. 18]; *Fath v. Texas Dep't of Transp.*, 924 F.3d 132, 136 (5th Cir. 2018).
[30] [Doc. No. 36, pp. 2–4].
[31] [Doc. No. 40, p. 1].

5 U.S.C. § 706(2)(A)–(F).

The party challenging the agency's action bears the burden of showing that the agency's determination was arbitrary and capricious. *La. Pub. Serv. Com'n v. F.E.R.C.*, 761 F.3d 540, 558 (5th Cir. 2014). The Supreme Court explains the court's role under this standard is to ensure agency action is "reasonable and reasonably explained," verifying that the agency acted within a "zone of reasonableness." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). "A decision is arbitrary or capricious only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dep't. of Agric.*, 991 F.2d 1211, 1215 (5th Cir. 1993).

All legal questions pertaining to the FTC's final order are reviewed *de novo*, while the FTC's factual findings are reviewed for "substantial evidence." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 392 (2024) (holding that courts must exercise independent judgment in deciding whether an agency has acted within its statutory authority). The substantiality of evidence must be based on a consideration of not only the evidence justifying the decision, but also "whatever in the record [that] fairly detracts from its weight." *Universal Camera Corp.*, 340 U.S. at 488. Courts may examine whether "the agency considered the relevant factors in making the decision, its actions bear a rational relationship to the statute's purposes, and there is substantial evidence in the record to support it." *Boquet Oyster House*, 2011 WL 5187292, at *4.

Accordingly, this Court will proceed by reviewing *de novo* whether the FTC properly applied the HISA statutes, then consider whether the factual findings were supported by substantial evidence, and lastly, determine whether the FTC's final decision was arbitrary or capricious.

### B.    HISA Application

#### 1.    The FTC Correctly Applied HISA Rule 3122

For the first step of the analysis, the Court will examine whether the FTC properly applied the HISA laws in deciding Wong's case. The Fifth Circuit has observed the *Accardi* doctrine represents the simple rule that an agency must abide by its own regulations. *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979).  In contesting the ADMC Program violation, Wong availed himself of a hearing before an HIWU arbitrator.[32] After the arbitrator found Wong was strictly liable for the presence of Metformin in Heaven and Earth's samples, Wong chose to appeal for *de novo* review before the ALJ.[33] Although the ALJ upheld the arbitrator's decision, Wong argues the ALJ failed to correctly apply HISA Rules 5510 and 7260.[34] Wong's Motion asserts "the ALJ prematurely applied HISA Rule 3120's burden-shifting framework to require that Wong disprove [the Sample's] authenticity."[35] Because the FTC's Final Decision upheld ALJ's application of Rule 3120 over Rules 5510 and 7260, Wong argues the FTC's Final Decision should be vacated and set aside.[36] The FTC asserts the HISA rules were properly applied, arguing Rule 3122's burden-

---

[32] [Doc. No. 29-1, p. 17].
[33] [Id. at p. 18].
[34] [Id. at p. 20].
[35] [Id.].
[36] [Id.].

shifting framework acts as "a more specific evidentiary rule that Rule 7260(d) incorporates by reference."[37]

Turning to the text, HISA Rule 7260(d) grants an arbitrator the power to "determine the admissibility, relevance, and materiality" of evidence, but it expressly incorporates Rule 3120 to provide the governing standard of proof. HISA Rule 7260(d). HISA Rule 3120 sets out the standards for Proof of Violations. Rule 3122(c) states that "laboratories are presumed to have conducted Sample analysis and custodial procedures in accordance with the Laboratory Standards" which are defined as the ADMC Program Series 6000 rules. HISA Rule 3122(c); *see* HISA Rule 6000. Pursuant to Rule 3122(d), departures from any Standards or provisions of the ADMC program are presumed not to invalidate an adverse analytical finding. HISA Rule 3122(d). When reading the provisions together, the Court agrees with the FTC's conclusion that "drug testing evidence is both admissible and proof of a violation, even if a chain-of-custody requirement departure occurred, unless the Covered Person establishes that the departure could reasonably have caused the violation."[38]

Wong was found liable for the presence of a banned substance under HISA Rule 3212(a), a strict liability offense for which the "intent, Fault, negligence, or knowing Use on the part of the Responsible Person" is not required to establish a violation. HISA Rule 3212(a). Once a violation is established, Wong is only entitled to a potential mitigation of consequences where he is able to establish the source of the banned substance, and subsequently demonstrates, on a balance of probabilities,

---

[37] [Doc. No. 33-1, p. 20].
[38] [Id. at pp. 19–20].

that he acted with No Fault or Negligence under Rule 3224, or No Significant Fault or Negligence under Rule 3225. HISA Rules 3224 and 3225. While Wong claims "a Responsible Person is hard pressed to prove" Rule 3324 or 3325, Wong fails to provide any evidence in his Motion establishing the source of the Metformin in Heaven and Earth's system.[39] Instead, Wong argues departure from the standards of testing, specifically the lack of chain-of-custody evidence required under HISA Rule 5510(b), proves HIWU did not have "sufficient evidence necessary to carry its burden of proving that Wong violated HISA Rule 3212."[40] The Court agrees with the FTC that the Final Decision cannot be vacated based on departure alone.[41]

The Court finds the ALJ properly applied the balancing test of HISA Rule 3122. The Court will now determine whether the factual findings were supported by substantial evidence.

### 2.      Substantial Evidence Weighs in Favor of the FTC

Wong argues there were "numerous errors" in the testing and analysis of Heaven and Earth's samples by the first two laboratories.[42] He asserts the errors rendered the laboratories' analyses "inadmissible and unreliable."[43] However, merely pointing out departures from applicable testing standards or protocols does not shift the burden to the defendant. While the "APA imposes no general obligation on agencies to conduct or commission their own empirical or statistical studies," an

---

[39] [Doc. No. 29-1, p. 14].
[40] [Id. at p. 24]; HISA Rule 5510(b).
[41] [Doc. No. 33-1, p. 20 n.12].
[42] [Doc. No. 29-1, p. 17].
[43] [Id.].

agency's evidence must be accurate and supported, not perfect. *Prometheus Radio Project*, 592 U.S. at 427; *compare with Ryan, LLC v. FTC*, 746 F. Supp. 3d 369, 388 (N.D. Tex. 2024) (finding the record did not support a broad non-compete rule as the rule was "based on inconsistent and flawed empirical evidence," ignored the positive benefits of non-compete agreements, and disregarded conflicting evidence). Under HISA Rule 3122(c)–(d), test results are presumed valid unless Wong proves that those departures could have reasonably caused the adverse analytical finding. The ALJ ruled Wong did not overcome this presumption as he did "not allege, or offer any evidence indicating, that these departures could have reasonably caused the AAF."[44] The factual findings are reviewed to determine whether they were formed by substantial evidence.

The arbitrator clarified that in order to invalidate the adverse analytical finding of Metformin in Heaven and Earth's samples under HISA Rule 3212, Wong must rebut the presumption that the three laboratories adhered to ADMC Rules. "To do so, he must first establish that there has been a departure from the Rules of the ADMC program, and second, that this departure could reasonably be the cause of the alleged AAF, both on a balance of probabilities. This must be done with proper evidence, and not mere speculation. Third, if and only if Wong rebuts the presumption does the burden shift to HIWU to establish that the departures did not cause the AAF."[45]

---

[44] [Doc. No. 1-12, p. 12].
[45] [Doc. No. 1-10, p. 403].

Wong claims throughout the arbitration he "challenged HIWU's enforcement action for its lack of HISA Rule 5510 chain-of-custody evidence and sought dismissal of HIWU's charge—at multiple stages—based on the lack of evidence."[46] While the ALJ agreed a departure of Rule 5510(b) occurred, the ALJ nevertheless determined Wong failed to show how a deviation from the chain of custody requirements "could reasonably have led to an incorrect finding of the presence of Metformin."[47] Wong claims in his Reply that the departure from HISA Rule 5510 puts into question whether the samples tested were even from Heaven and Earth.[48] The administrative record shows this argument is without merit.

First, Wong requested the lab, used for further analysis, conduct a DNA test to ensure the samples came from Heaven and Earth, but HIWU denied the request, asserting there was "no basis for DNA testing" and "no evidence whatsoever to suggest that the Samples in question were not collected from Heaven and Earth."[49] Second, Wong asserts the arbitrator denied his "request for DNA testing, which would have been [his] only mechanism for proving the identity of the Samples."[50] Turning to the record, while Wong claims the arbitrator denied his "limited document requests," the arbitrator's denial explains that Wong requested 24 documents that were "far reaching and appear[ed] to be little more than a fishing expedition."[51] The arbitrator denied Wong's motion for production of documents, but stated that if Wong

---

[46] [Doc. No. 29-1, p. 18].
[47] [Doc. No. 1-12, p. 12].
[48] [Doc. No. 36, p. 8].
[49] [Doc. No. 1-10, p. 263].
[50] [Doc. No. 29-1, pp. 18–19].
[51] [Doc. No. 1, p. 9 at ¶ 40]; [Doc. No. 1-2, p. 188].

could state with specificity which documents he needed and could "state a basis for a reasonable particularized request, such request may be filed."[52] While Wong asserts these "basic discovery requests … would have been available under the Federal Rules of Civil Procedure," the Court maintains that even under the Federal Rules of Civil Procedure, Rule 26 sets out the discovery scope and limits, allowing discovery that is proportional to the needs of the case and instructing that discovery requests must be pled with specificity [53] FED. R. CIV. P. 26(b)(1). As such, the Court finds the arbitrator was well within their discretion to deny the document production request.

Third, in the final decision from the arbitrator, the parties stipulated to the fact that Heaven and Earth's blood and urine samples collected after the race bore the codes #B100231018 and #U100231018, respectively.[54] All three laboratories tested samples bearing the same code numbers as the samples taken from Heaven and Earth, and all three laboratories found the presence of Metformin in the samples.[55] In conclusion, Wong has not offered any evidence to rebut the presumption that the samples collected from Heaven and Earth were the samples tested. Therefore, the Court agrees with the ALJ's reasoning that "[Wong] could have, but did not, proffer expert opinion as to whether the failure to refrigerate the blood sample, or to refrigerate or freeze the urine sample, could reasonably have led to an incorrect finding of the presence of Metformin."[56]

---

[52] [Doc. No. 1-2, p. 188].
[53] [Doc. No. 1, p. 9 at ¶ 40].
[54] [Doc. No. 1-2, p. 43 at ¶ 6]; [Doc. No. 1-3, p. 34].
[55] Doc. No. 1-2, pp. 43–44 at ¶¶ 7, 12, 16]; [Doc. No. 1-4, pp. 77, 149].
[56] [Doc. No. 1-12, p. 12].

It is undisputed, even by Wong's expert, that all three laboratories confirmed the presence of Metformin in Heaven and Earth's samples.[57] Heaven and Earth's blood and urine samples were first sent to Industrial Laboratories for analysis. The laboratory found Metformin in the amount of 0.631 ng/mL in the blood sample and 242.5 ng/mL in the urine sample.[58] During UIC's laboratory testing, Metformin was found at 0.5 ng/mL in the blood sample and 1 ng/mL in the urine sample.[59] During UC Davis's laboratory testing, Metformin was found in the blood sample at 1 ng/mL and urine sample at 10 ng/mL.[60] "Consistent with the requirements of the ADMC Program Rules, Metformin is a Banned Substance that is not subject to any testing threshold."[61] "Therefore, the presence of Metformin in a sample is an adverse finding regardless of the amount of the drug detected."[62] The precise concentration of Metformin in Heaven and Earth's samples is irrelevant in this regard. This means labs are only required to perform a qualitative analysis to confirm the presence of a substance in a sample, but this does not determine exactly how much of the substance is present.[63]

---

[57] [Doc. No. 1-2, p. 62 at ¶ 2.109; p. 74 at ¶ 7.5].

[58] [Doc. No. 1-5, pp. 26, 37]; [Doc. No. 1-10, p. 76 at ¶ 7]. The arbitrator's decision clarified "with regard to estimates as to quantity of substances found to be present, changes are being made at Industrial to clarify the entries so there is no misinterpretation: values included on the worksheet are estimates for information purposes only. They are not intended to be considered the result of a validated quantitative process." [Doc. No. 1-10, p. 375].

[59] [Doc. No. 1-3, pp. 49–50]; [Doc. No. 1-3, pp. 54–55 at ¶ 9]; [Doc. No. 1-10, p. 76 at ¶ 12].

[60] [Doc. No. 1-4, pp. 55, 110, 147]; [Doc. No. 1-10, p. 77 at ¶ 15].

[61] [Doc. No. 1-10, p. 373; HISA Rule 3212(c) ("The general rule is that the presence of any amount of a Banned Substance or its Metabolites or Markers in a Sample collected from a Covered Horse constitutes an Anti-Doping Rule Violation by the Responsible Person of that Covered Horse.")].

[62] [Doc. No. 1-10, pp. 373–74 at ¶ 2.18].

[63] [Id. at p. 374].

In summation, Wong's defense fails to overcome the evidentiary burden of HISA Rule 3212. While the ALJ conceded that there was a departure from HISA Rule 5510, Wong failed to establish, with proper evidence, not speculation, that the departure could reasonably be the cause of the Metformin in Heaven and Earth's samples. The Court concludes there was substantial evidence to support the FTC's finding that deviation from the rules did not cause the positive testing of Metformin in Horse. *See Prometheus Radio Project*, 592 U.S. at 427.

### 3. The FTC's Determination was not Arbitrary or Capricious

Plaintiff has failed to show that the FTC's determination was arbitrary and capricious. *Louisiana Public Service Com'n*, 761 F.3d at 558 (5th Cir. 2014). Wong has not established that the FTC failed to properly apply the HISA evidentiary rules or that any rule departures caused the positive lab results. The record supports the FTC's Final Decision to uphold the ALJ's decision.

The ineligibility and financial penalties imposed on Wong for the violation of the ADMC Program are in clear alignment with the section of HISA that governs sanctions. Under HISA Rule 3223, the presence of a banned substance under Rule 3212 subjects the Covered Person to a period of ineligibility for 2 years and financial penalties of a "fine of up to $25,000 or 25% of the total purse (whichever is greater); and Payment of some or all of the adjudication costs and the Agency's legal costs." Additionally, under HISA Rule 3321, if a Covered Horse has results disqualified under the Protocol, then "all purses" must be repaid or surrendered. As discussed above, Wong did not establish how the Metformin entered into Heaven and Earth's

system, and thus, is not entitled to a mitigation of the consequences under HISA Rules 3224 or 3225.[64] The Authority administered the proper consequences when they suspended Wong from thoroughbred horseracing for two years, made him forfeit $21,600 of Heaven and Earth's winnings, fined him $25,000, and took another $8,000 for "adjudication costs."[65]

The administrative record demonstrates that the FTC acted within its statutory and regulatory power under the HISA Rules, supported its findings with substantial evidence, and reached a rational conclusion. Because the FTC's Final Decision falls squarely within the "zone of reasonableness," the Court **DENIES** Wong's Motion for Summary Judgment [Doc. No. 29] and **GRANTS** the FTC's Motion [Doc. No. 33]. *FCC v. Prometheus Radio Project*, 592 U.S. at 423.

## III.    CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Motion for Summary Judgment [Doc. No. 29] filed by Wong is **DENIED**.

**IT IS FURTHER ORDERED**, **ADJUDGED**, **AND DECREED** that the Motion for Summary Judgment [Doc. No. 33] filed by Defendant is **GRANTED**, and Wong's claims against Defendant are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 30th day of March 2026.

_____

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

---

[64] [Doc. No. 33-1, p. 13].
[65] [Doc. No. 1, p. 21 at ¶ 129].